(No. 12777.—Reversed and remanded.)

SHERMAN G. COLE *et al.* Appellants, *vs.* ALBERT H. COLE *et al.* Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 15, 1920.*

1. SPECIFIC PERFORMANCE—*equity will enforce an agreement among devisees and legatees to settle rights under will.* An agreement among all the devisees and legatees to settle their rights under the will is looked upon with favor by courts of equity and will be enforced unless there is some insuperable bar to prevent.

2. WILLS—*what is sufficient consideration for agreement among devisees and heirs to settle rights under will.* The surrender by certain heirs of their right to file a bill to set aside a will is sufficient consideration for an agreement among all the heirs and devisees to settle a controversy over their rights under the will; and such an agreement will not be affected by the re-probate of the will by heirs who were not notified of the original probate but who are parties to the agreement, as the agreement, if otherwise capable of enforcement, will supersede the will, and it is immaterial whether or not the will is set aside by the court.

3. SAME—*executors may act as commissioners under agreement of devisees to settle rights under will.* Where all the devisees and legatees have entered into an agreement to settle their rights under a will, the fact that the commissioners they appoint to act in the matter of settlement are also executors and trustees under the will does not affect their duties as commissioners where the effect of the agreement is to divest the trustees and executors of all property disposed of by the will.

4. SAME—*when remainders are contingent and will be destroyed by quit-claim deeds among heirs and devisees.* Where a testator divides his property equally among his children, and provides that upon the death of a particular son and daughter, who have no children at the time the will is made, the shares devised to them shall go, respectively, to their children if they leave any surviving them, and if not, to the other children of the testator, the remainders are contingent and will be destroyed by mergers of the life estates and the reversions by quit-claim deeds exchanged among the heirs, devisees and legatees to specific portions of the land, pursuant to an agreement among all the heirs, devisees and legatees to settle their rights in the property. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11, distinguished.)

5. SAME—*provisions in case of the death of devisee are to be construed according to intention of testator.* Such expressions as

"die without children," "die without living children or grandchildren," "die leaving no children or grandchildren," and "die without issue," are to be construed according to the intention of the testator as ascertained from the whole will, and no technical meaning is to be attributed to the particular words used.

6. SAME—*testator may create a life estate in personal property with remainder over.* A testator may create a life estate in personal property with a remainder over, which may be either vested or contingent, as the principles applicable to the vesting of remainders in real estate apply to gifts of personal property where the original gift is personalty and not merely a payment of income.

7. SAME—*when agreement of devisees supersedes will.* Where all the heirs, devisees and legatees of all the property disposed of by a will enter into a contract, after the death of the testator and the probate of the will, to settle their rights in the property, the will is superseded by the contract and the property becomes intestate property.

8. SAME—*representatives of deceased devisee are bound by his contract to dispose of his share.* Where all the heirs, devisees and legatees of all the property disposed of by will enter into an agreement to dispose of the property among themselves according to the terms of the agreement, the death of one of the parties does not terminate the contract, as both he and his representatives are bound by his act.

9. DOWER—*right of dower is subject to incumbrance existing at time of seizure.* The right of dower subsists by virtue of the seizin of the wife or husband and is always subject to any incumbrance, infirmity or incident which the law attaches to that seizin, either at the time of the marriage or at the time the husband or wife became seized.

10. PARTITION—*husband or wife of tenant in common is not a necessary party.* The husband or wife of a tenant in common is not a necessary party to a suit for the partition of real estate, as the liability to be divested by a sale in partition is an incident which the law affixes to the seizin of all joint estates, and the inchoate right of dower is subject to that incident and exists only in the share of the personalty or of the realty which the tenant in common takes in severalty by the partition.

11. SAME—*husband or wife of tenant in common is not necessary party to deed for partition by agreement.* As a tenant in common has a right to compel partition by process of law, to which the husbands or wives of his co-tenants need not be parties, the inchoate right of dower in the husband or wife of a co-tenant is, in the absence of fraud, likewise affected in case of voluntary partition, where the co-tenants agree to divide the property by deeds

among themselves; and the husband or wife of a co-tenant need not be a party to such a deed.

12. SAME—*partition affects only unity of possession and does not affect the title.* Partition, whether voluntary or by judgment or decree, has the effect, only, of severing the unity of possession and does not vest in either of the co-tenants any new or different title so that either co-tenant can be said to hold under the other, but after the partition each party has the same title which he had before, except that his possession is now in severalty.

APPEAL from the Circuit Court of LaSalle county; the Hon. JOE A. DAVIS, Judge, presiding.

LEE O'NEIL BROWNE, and BOYS, OSBORN & GRIGGS, (GEORGE S. WILEY, guardian *ad litem*, of counsel,) for appellants.

BUTTERS & CLARK, and McDOUGALL & CHAPMAN, for appellees Charles E. Cole and Albert H. Cole.

DUNCAN & O'CONOR, for appellees Edward C. Swift and Charles E. Hook.

Mr. JUSTICE STONE delivered the opinion of the court:

Samuel D. Cole died testate October 17, 1913, leaving him surviving no widow but leaving Sherman G. Cole, Julia B. Cole, Lydia M. Tate, Albert H. Cole and Charles E. Cole, his children, as his only heirs-at-law. His will and codicil were admitted to probate November 14, 1913, on the usual petition in such matters, with notice to the five named children as all the legatees in the will and as all the heirs-at-law of the testator. The children of Charles E. Cole, Lydia M. Tate and Albert H. Cole were not notified of these proceedings. Julia B. Cole and Sherman G. Cole have never had children. Charles E. Cole is married and has a wife and four children, the youngest of such children being twenty-seven years of age. Albert H. Cole is married and has a wife and nine children, the youngest being twenty-three years of age. Lydia M. Tate is a widow

and had at the time of the death of Samuel D. Cole two children living, viz., Frederick G. Tate, an adult, who died June 16, 1918, and left surviving a widow and one child, now fifteen years of age, and Alice Kelly, married and having adult children of her own. Upon the admission of the will to probate appellees Edward C. Swift and Charles E. Hook, executors named in the will, qualified as such and entered upon their duties.

The will, after making provision for the payment of debts, devises the entire estate to the widow during her lifetime or widowhood. The will then devises by the fourth clause as follows:

*"Fourth*—If my widow shall marry again, then upon such marriage, or if she shall remain my widow for and during her natural life then upon her decease, my executors shall divide my estate, both real and personal, into five equal parts in value and shall allot and deliver one of such five parts to each of my five children, viz., Lydia M. Tate, Julia B. Cole, Albert H. Cole, Charles E. Cole and Sherman Cole, and each of my said children shall have, use and enjoy such part, and the use and income thereof, for and during his or her natural life, that is to say: The part so allotted to my said daughter Lydia M. Tate shall be held, used and enjoyed by her for and during her life and at her decease shall be equally divided into two parts in value, one of which parts I give, devise and bequeath to her son, Frederick Tate, to be his absolute property forever, and the other part shall be equally divided among my other four children, Julia B. Cole, Albert H. Cole, Charles E. Cole and Sherman Cole, to be their absolute property forever. The part so allotted to my said daughter Julia B. Cole by my executors shall be held, used and enjoyed by her for and during her natural life and at her decease shall be equally divided between her children, share and share alike, and if she shall then have no children nor grandchildren living, the said part of my estate so allotted to her by my

executors shall at her decease be equally divided among my children, Lydia M. Tate, Albert H. Cole, Charles E. Cole and Sherman Cole, but the part so going to Lydia M. Tate shall be held, used and enjoyed by her during her life and at her decease shall become the absolute property of her son, Frederick Tate. The part so allotted by my executors to my son Albert H. Cole shall be held, used and enjoyed by him for and during his natural life and at his decease shall be divided equally among his children. And the share so allotted by my executors to my son Charles E. Cole shall be held, used and enjoyed by him for and during his natural life and at his decease shall be equally divided among his children. And the part so allotted by my executors to my son Sherman Cole shall be held, used and enjoyed by him for and during his natural life and at his decease shall be equally divided among his children, and if he shall die leaving no children nor grandchildren, then the part so allotted to him by my executors shall at his decease be equally divided among my other children, Lydia M. Tate, Julia B. Cole, Albert H. Cole and Charles E. Cole. Such part so to go to said Lydia M. Tate shall be held, used and enjoyed by her during her life and at her decease shall become the absolute property of her son, Frederick Tate."

The original will was executed March 24, 1899. On August 17, 1909, the testator executed a codicil to the will, by which the shares given to Albert H. and Charles E. Cole were changed from a life estate to a fee in the same share.

On January 2, 1914, a bill was filed by Julia B. Cole, Lydia M. Tate and Sherman G. Cole, complainants, against Frederick G. Tate, Charles E. Cole, Albert H. Cole and Swift and Hook, executors, defendants, to set aside said will and codicil on the ground of mental incapacity of the testator, Samuel D. Cole. After the filing of the bill to set aside the will and codicil the five children of the deceased and Frederick G. Tate entered into an agreement for a settlement of the controversy and a distribution of the estate,

which agreement, after the usual heading, recites the filing of the bill to set aside the will and codicil and then proceeds as follows:

"Whereas the said children of said Samuel D. Cole, deceased, and said Frederick Tate, grandson of said Samuel D. Cole, deceased, agree that the entire estate of said Samuel D. Cole, deceased, shall be equally divided among said children of said decedent without delay and at as early a date as possible, as hereinafter stated;

"Therefore it is hereby mutually agreed by, between and among the said children of said decedent and said devisees and legatees mentioned in said decedent's last will and testament, as follows:

"1. That in the said suit in chancery now pending in said circuit court, they, nor either of them, will make any defense to the setting aside of the said last will and testament of said Samuel D. Cole, and that the same be set aside and a decree of said circuit court may be entered setting the same aside and declaring the same to be null and void, and that thereupon the said estate of said decedent shall be inherited by the children of said decedent and shall be subject to be divided among the said children of said decedent, and shall be divided and disposed of in the manner following.

"2. Letters of administration shall be issued by and out of said probate court to said Charles E. Hook and Edward C. Swift, as administrators *de bonis non* of said estate."

Clause 3 provides for the payment of commissions to the trustees and certain attorneys' fees. Clause 4 provides for the payment to Albert H. Cole of certain moneys expended by him. Clauses 5, 6 and 7 are as follows:

"5. The remainder of said estate shall be equally divided, according to value, between said children of said Samuel D. Cole, deceased, viz., Albert H. Cole, Lydia M. Tate, Julia B. Cole, Charles E. Cole and Sherman Cole, share and share alike.

"6. And we do hereby appoint said Charles E. Hook and Edward C. Swift to make the division of the said remainder of said estate between and among us, the said Albert H. Cole, Julia B. Cole, Lydia M. Tate, Charles E. Cole and Sherman Cole. They shall first take and subscribe an oath to make such division fairly, equitably and impartially, according to value. They shall go upon the farm property of said estate, and each and every tract thereof, and acquaint themselves with the values thereof, and they shall also personally examine each and every of the city lots of said estate and acquaint themselves with the values thereof. They shall then divide all the said remainder of said estate, real, personal and mixed, of every kind and nature, into five equal parts, according to quality and quantity, the object being to make the said five parts all equal in value. The moneys and other personal property of said estate may be used by said Hook and Swift to equalize the said shares in such manner as they may deem best in equalizing said shares, the division here contemplated being a division of all of said estate, both real and personal, into five shares equal in value.

"7. The said Hook and Swift in the said division of said estate shall allot and set aside to each of said five children of said Samuel D. Cole, deceased, the particular share of each, and shall designate to whom each share is allotted and set aside, and they shall describe the shares of said farm property, in so dividing it, by metes and bounds or other proper description; and each of said parties, viz., Albert H. Cole, Lydia M. Tate, Julia B. Cole, Charles E. Cole and Sherman Cole, shall receive the said shares of said estate so allotted and set apart to them, respectively, as their full, equal and proper shares, respectively, of said estate, and they shall make and deliver to the others proper quitclaim deeds, vesting in them and each of them the title and right to the shares of said real estate so allotted, set apart and designated to them, respectively, by the said Swift and

Hook. And the said parties to this agreement, the same being the said children of said Samuel D. Cole, deceased, shall make, execute and deliver, each to the other, such necessary written instruments, and acknowledge the same if necessary, as shall be necessary to vest fully and completely in each of them, respectively, all right, title and interest in and to the shares of said estate so set apart and allotted to them, respectively, by the said Hook and Swift. And the said parties to this agreement shall do and perform all things necessary to carry into effect this agreement and perfect the title in each other in and to the shares, respectively, so to be designated and allotted by the said Swift and Hook."

Clause 8 of the contract provides for the payment out of the shares to be allotted to Lydia M. Tate, Julia B. Cole and Sherman G. Cole, of certain fees for solicitors of the trustees and executors. Clause 9 provides for the giving of certain quit-claim deeds to Julia B. Cole covering property deeded to her by the deceased in his lifetime. Clause 10 is as follows:

"10. Said Lydia M. Tate shall make, execute, acknowledge and deliver to said Frederick Tate, her son, such necessary written instrument or instruments as shall secure to him, at her decease, property equal in amount to that which is devised to him in and by said will of said Samuel D. Cole, deceased."

After the execution and delivery of the foregoing contract the circuit court proceeded to a hearing on the bill to contest the will, and thereafter entered a decree finding that the instruments purporting to be the last will and testament, and the codicil thereto, of Samuel D. Cole were not and are not his last will and testament, and decreeing that the will, and the probate thereof, be set aside and declared to be null and void.

On the first day of March, 1916, the appellees Swift and Hook took and subscribed the oath provided for in the

292 — 11

agreement and closed all matters pertaining to the probate
of the will, and as commissioners under the agreement took
possession of the property and entered upon the duties nec-
essary to carry out the terms and conditions of the contract,
including their appointment as administrators *de bonis non.*
They went upon the land and made an appraisement and
estimate of the expense necessary to carry out the contract,
and after deducting the same they balanced their account
and declared the net amount subject to be divided and al-
lotted as per the agreement, giving, in so far as possible,
real estate to each of the five children, and in those cases
where the allotment of real estate did not equal one-fifth
of the net amount determined as aforesaid, apportionments
in cash were made in amounts necessary to divide the estate
into five equal portions. On May 19, 1916, they sent out
notices to each of the five children that quit-claim deeds had
been prepared conveying to each by the remaining four the
respective interests in the land of Samuel D. Cole so set
off and allotted by them as commissioners, and set May 22,
1916, at the office of E. C. Swift, as the time and place
when the grantors, respectively, should execute the deeds
of transfer. Sherman G. Cole and wife executed the four
deeds necessary to make the conveyance to the other four
children as directed by the commissioners. Julia B. Cole,
unmarried, did likewise. Lydia M. Tate, a widow, did like-
wise. Charles E. Cole, his wife joining him, did likewise.
These four deeds were at the time of their execution de-
livered to the commissioners, to be by them delivered to
the respective grantees when all of the children had com-
plied with the agreement. Albert H. Cole refused to sign
the four deeds, respectively, to the other four children and
to accept the deed by them signed, conveying the land to
him as allotted by the commissioners.

On May 28, 1916, a petition was filed in the probate
court of LaSalle county by Charles S. Cole and others, chil-
dren of Albert H. Cole, setting forth the previous petition

and order of probate of said court, in which petition they disclaimed the receipt of any notice of the original probate of said will and codicil and the fact that the order of probate is still in force and effect, and praying for an order vacating, annulling and setting aside the previous order of said court entered November 13, 1913, admitting the will and codicil to probate. Thereupon the probate court set aside the previous order admitting the will and codicil to probate, and after giving notice to each of the five children of Samuel D. Cole, and to Frederick G. Tate, and to the children of Albert H. Cole and Charles E. Cole, that court on July 11, 1916, admitted to probate the will and codicil of Samuel D. Cole. An appeal was prayed therefrom and perfected to the circuit court of LaSalle county by Sherman G. Cole, Julia B. Cole, Lydia M. Tate and Frederick G. Tate, and by Charles E. Cole to so much of said order as re-probates the codicil to the last will and testament. These appeals were consolidated, and after hearing the testimony of the proponents' and contestants' witnesses the circuit court found the will and codicil to have been duly executed, published and declared; that Samuel D. Cole, the testator, was of sound mind and disposing memory and otherwise competent to make the will, and ordered the will and codicil to be recorded as and for his last will and testament.

No further action was taken by any of the parties to this contract in the matter of contesting the second order of probate or contesting the said will and codicil, which we will hereafter refer to as the will of Samuel D. Cole. A certificate of the orders entered in the circuit court was filed in the probate court and the last will and testament were duly entered of record and probated. Thereupon Swift and Hook qualified as executors and trustees under the will, closed the proceedings had and taken as administrators *de bonis non,* and are now acting in the capacity of such executors and trustees.

The bill of complaint in this cause was filed in the circuit court of LaSalle county on May 31, 1916, by the appellants and Charles E. Cole as complainants. Charles E. Cole later-refused to permit the commissioners to deliver the deed which he and his wife had executed and he was thereupon made a party defendant with Albert H. Cole and Swift and Hook. The bill as amended prays specific performance of the contract by Albert H. Cole and Charles E. Cole, and seeks an order directing Swift and Hook, individually and as trustees, executors and administrators *de bonis non* of the estate of Samuel D. Cole and as agents and commissioners under the agreement, to deliver to the grantees named in the several deeds and the parties to the contract, severally, the assets so allotted to them by Swift and Hook and any additional assets acquired by them in the same proportion, after deducting and paying necessary claims, costs and expenses, fees, etc. The chancellor, on hearing of evidence, dismissed the bill for want of equity.

It is contended by the appellants that the agreement in question is what is known as a "family settlement of differences" among all parties in interest in the estate of Samuel D. Cole, deceased; that the decree setting aside the will was a valid decree, but, regardless of how that question be decided and regardless of the re-probating of the will and the fact that it now stands uncontested of record, the contract had the effect of superseding the will, and that the contract is one which courts of equity will enforce. It is contended by the appellees Albert H. Cole and Charles E. Cole that an essential condition of the contract in question to be performed as a condition precedent to their performance was the setting aside of the will of Samuel D. Cole; that the agreement was not made for the purpose of transferring the interests which Frederick G. Tate and the children of Samuel D. Cole have acquired as legatees under the last will and testament of Samuel D. Cole and was not so understood at the time of the execution of the

agreement; that the original probate of the will was null and void because of the failure to give notice, as required by law, to Frederick G. Tate and to the children of Albert H. Cole and Charles E. Cole then living; that the decree of the circuit court in the proceedings to contest the last will and testament of Samuel D. Cole is null and void, for the reason that no such last will and testament had been admitted to probate by a court having jurisdiction, and that the will, since the second probate thereof, stands as a valid will, and that the contract should not be enforced by reason of mistake of law and fact.

It is evident from an examination of the contract in question that it was entered into as an adjustment of a controversy among the heirs of Samuel D. Cole, some of whom had filed a bill to contest and set aside the will. The purpose of this contract was evidently to divide the property notwithstanding the will and in a method somewhat different from that provided in the will. The fact that some of the heirs had filed a bill to set aside the will and that they reasonably believed they had a right to have it set aside, which right they gave up by the contract in question, constitutes a valid consideration for such a contract. *Pool* v. *Docker*, 92 Ill. 501; *Honeyman* v. *Jarvis*, 79 id. 318.

The validity of contracts of this character has been repeatedly recognized by this court. Courts of equity favor the settlement of disputes among members of a family by agreement rather than by resort to law. In the case of *Hall* v. *Hall*, 125 Ill. 95, the testator, Alexis Hall, by his will gave the greater share of his estate to his son Eugene A. Hall. For the purpose of adjusting the differences arising between the other children of the testator and Eugene an agreement was entered into providing that the property of the testator should be divided, share and share alike, notwithstanding the will. Of such an agreement this court there said: "This is an agreement of the most praiseworthy kind,—an amicable arrangement amongst brothers and sis-

ters of difficulties between them, which would doubtless have been carried out to the entire satisfaction of them all but for the sudden death of Eugene. It is an agreement which a court of equity will look upon favorably and readily interpose for its specific performance unless there be some insuperable bar to prevent." In the case of *McDole v. Kingsley,* 163 Ill. 433, an agreement was entered into by the heirs of Rodney McDole, deceased, to settle the differences with reference to the division of the estate and property, by which it was mutually agreed that the will might be probated, but that instead of abiding by the will and the distribution thereunder the property should be divided equally. In upholding this contract this court there said: "The mutual concessions for the prevention of litigation afforded a valid consideration for the agreement. (1 Parsons on Contracts,—5th ed.—438; Bishop on Contracts, sec. 57; 1 Addison on Contracts, sec. 14.) And such a consideration is not only sufficient, but is looked upon with great favor in a court of equity and will be enforced." To a like effect is *Dunham v. Slaughter,* 268 Ill. 625. It will be seen, therefore, that if the contract in question is capable of performance its enforcement will be decreed by a court of equity.

It is urged by appellees that one of the material provisions of the contract was that the will be set aside, and that by reason of want of jurisdiction in the circuit court at the time the hearing on the bill to set aside the will was had and decree entered there was no valid decree setting aside the will, and that the will later having been duly probated stands now as a valid instrument, and therefore the provision of the contract that the will should be set aside has failed. An examination of the contract will show that the purpose of it was, as we have said, to adjust family differences arising over the will of Samuel D. Cole. The contract itself states that it was entered into because of this fact and the fact that a bill had been filed to set aside the

will and codicil of the deceased, and that it was the agreement of all the children of Samuel D. Cole, and of Frederick G. Tate, a grandson, that the estate of Samuel D. Cole should be divided equally among the children without delay and at as early a date as possible. This was the purpose of the contract, as we view it. The contract recognized the existence of the will and provided for the distribution of the property equally, notwithstanding the will. Whether or not the will was set aside by the decree was therefore of no moment. While the contract provided, as one of the steps in carrying out the division of this property, that the will be set aside by a decree of court, yet if this contract is capable of enforcement in other ways it is wholly immaterial whether or not the will was set aside by a decree of court, since the effect of the contract was to do just that thing. The contention of appellees, therefore, that one of the essential considerations of the contract of settlement was that the will be set aside by a decree can not be sustained.

It is also objected by appellees that the trustees and executors, Hook and Swift, have no power to make a division of the estate in accordance with the contract so long as the will remains in existence. This argument seems to proceed upon the erroneous assumption that Hook and Swift would make a division under the contract as trustees and executors. Such is not the case. By the contract they are nominated as commissioners, and if they act under it they act as commissioners and not as trustees and executors. If this contract be enforcible as one which supersedes the will, there is no reason why Hook and Swift, or anyone else for that matter, might not be nominated as such commissioners by the contracting parties. Anyone nominated as commissioner and acting as such would be acting in that capacity, only. The fact that he may be also an executor and trustee under the will does not change his duty as commissioner. Neither the will nor the contract creates any

residuum of the estate, nor is there any division by description but an equal division of the entire estate is provided for. Therefore, when the contract is carried out in full the entire property of the estate passes under the contract. Hook and Swift, by acting as commissioners under the contract, are fully protected from any liability as trustees or executors, as no property of the estate will remain in their hands as such trustees and executors. The commissioners under this contract, whether they be the trustees and executors here or other persons, have the duty, under the contract, to formulate a division of the property of the estate as provided by the contract. They hold no title or interest to the property beyond that given them by the contract. The deeds and other instruments executed by the parties to the contract pass the title to the several parts of the property after the division has been made. The effect of this contract, and the deeds and instruments executed thereunder, is to divest the trustees of all title to the property of the estate.

We come now to a consideration of the question whether the contract is one which the contracting parties had power to make and the terms of which can and should be carried out. It cannot be doubted that if it lies in the power of the contracting parties to control all interests given under the will, then such parties have power to supersede the will by a contract that the property shall be treated as intestate property and partitioned as such. Whether the contracting parties have such power depends upon the terms of the will,—*i. e.,* whether or not they can by their acts control all interests devised by the will. The contract was, as we have seen, entered into by the five children of Samuel D. Cole, deceased, and Frederick G. Tate, the son of a daughter of the deceased. These, the record shows, are all the parties in being interested as devisees or legatees under the will, are all adults under no disability, and constitute also all of the heirs-at-law of Samuel D. Cole. An

examination of the will and codicil discloses that by the terms of the codicil to the will Albert H. Cole and Charles E. Cole are each devised a fee to one-fifth of the entire estate, both real and personal, of the testator. Lydia M. Tate is devised a life interest in one-fifth of the estate, and upon her death one-half the remainder is to go to her son, Frederick, in fee, and the other half to the other four children of the testator in fee. Frederick at the time of entering into the contract in question was of legal age. Julia B. Cole by the terms of the will was to receive one-fifth of the entire estate for life, and at her decease her share of the estate was to be "equally divided between her children, share and share alike, and if she shall then have no children or grandchildren living, the said part of my estate so allotted to her by my executors shall at her decease be equally divided among my children, Lydia M. Tate, Albert H. Cole, Charles E. Cole and Sherman Cole, but the part so going to Lydia M. Tate shall be held, used and enjoyed by her during her life and at her decease shall become the absolute property of her son, Frederick Tate." Julia has not now, and never has had, living children or grandchildren. Sherman G. Cole by the terms of the will was to receive one-fifth of the entire estate for life and at his decease to be "equally divided among his children, and if he shall die leaving no children or grandchildren," then the share so allotted to him is to pass in the same manner as the remainder over in the share given to Julia.

It is objected by appellees that the last two of these devises created interests which are not within the control of the parties to the contract, and that since by the terms of the contract it is agreed that each shall have all right, title and interest in and to the estate set apart and allotted to them, and that the parties to the agreement are to do and perform all things necessary to perfect the title in each other in and to the respective shares when allotted, the contract therefore is incapable of performance and cannot be en-

forced. It is contended, on the other hand, by appellants that the remainders given to unborn children of Julia and Sherman G. Cole are contingent remainders, depending on there being children of these parties and upon said children surviving such life tenants, and that a joinder of the life estate and the reversion in each would create a merger and destroy the contingent remainders.

We are of the opinion that the devise under the will to Julia B. Cole being a devise of a life estate with remainder over to her children, if she have any who are living or whose children are living at the time of her decease, created in such child or children a contingent remainder dependent upon their being born and. that they or their children be living at the decease of the life tenant. Upon the failure of these contingencies her share of the estate is to go to the other children of the deceased, with remainder over in the share of Lydia M. Tate to Frederick Tate, her son, all of whom are parties to the contract. The contingent remainder arising on the devise under the will to Julia B. Cole would be destroyed by a merger of the life estate and the reversion or the termination of the life estate before the happening of the contingency. The rule that a contingent remainder may be destroyed by a merger of the life estate and reversion is well settled in this State. *Bond* v. *Moore,* 236 Ill. 576; *Barr* v. *Gardner,* 259 id. 256; *Messer* v. *Baldwin,* 262 id. 48; *Blakeley* v. *Mansfield,* 274 id. 133; *Benson* v. *Tanner,* 276 id. 594; *McCarty* v. *McCarty,* 284 id. 196.

The devise to Sherman G. Cole is an estate for life with the remainder to his children, with the devise over as in the share of Julia B. Cole, "if he shall die leaving no children or grandchildren." This devise differs from that to Julia in that.it does not specifically state as a condition to the vesting of the reversion that he leave no children or grandchildren living at his decease. It is held to be the rule that in construing wills, effect should be given to the intention of the testator if it can be gathered from the pro-

visions of the will and is not in violation of rules of law. (*Stafford* v. *Read*, 244 Ill. 138.)   It is also the rule in this State that such expressions as "die without children," "die without living children or grandchildren," "die without issue," are to be construed in accordance with the intention of the testator where that can be learned from the whole will, and that no technical meaning is to be attributed to the particular words used.   (*Stafford* v. *Read, supra.*)   Applying this rule to the expressions here used, we are of the opinion that, considering the whole will together, it was the intention of the testator that unless there be children born to Sherman G. Cole who shall be living or whose children shall be living at the time of his decease, the contingency upon which the children or grandchildren of Sherman are to take would not be met, and the remainder over therefore would go to the brothers and sisters, as in the case of the share of Julia B. Cole.

In the case of *Furnish* v. *Rogers*, 154 Ill. 569, the gift of remainders was in language similar to that here, the will there providing: "I give and bequeath to my grand-niece, Jessie Starkweather, [describing real and personal property,] all of which is to go to her children should she marry.   If she should die childless, then it is to be divided between her mother and the rest of my grand-nieces and nephews."   It was there held that Jessie Starkweather took a life estate, and that the remainder created by the devise over was contingent on her marriage and the birth of children who survive the life tenant.   The court there said: "The language employed designates the children as those who take the remainder, and the estate does not vest in them, as an absolute fee simple title to them and their heirs forever, until the death of Jessie, as it is further provided that if she die childless the estate is to be divided among her mother and the rest of the testator's grand-nieces and nephews, etc.; whose estate is contingent upon the death of Jessie without a surviving child or children or the descend-

ants of such child or children, in which case the takers of the remainder are substituted for surviving children. By the first clause of the will Jessie Starkweather takes an estate for life in the house, lots and land and in the $500 therein bequeathed. The remainder is a concurrent, contingent remainder with a double aspect, to be determined immediately upon the death of Jessie, as at that moment it will vest in her child or children or the descendants of such child or children that survive her, and in default of such survival the remainder would vest in the mother of Jessie and the other grand-nieces and nephews of the testator.—*Dunwoodie* v. *Reed,* 3 S. & R. 452; *City of Peoria* v. *Darst,* 101 Ill. 609." To the same effect is the case of *Golladay* v. *Knock,* 235 Ill. 412.

The remainders in the share of Sherman G. Cole are contingent and would be destroyed by a merger of the life estate and the reversion or determination of the life estate before the happening of the contingency.

Appellees, in support of their contention that the remainder in the shares given to Julia and Sherman G. Cole are executory devises and therefore indestructible, cite the case of *Lachenmyer* v. *Gehlbach,* 266 Ill. 11. In that case the testator left surviving his widow and nine children, all living when the will was made and all living and adults at the time of his death. The will gave a life estate to the wife, and provided that after the death of the wife the estate was to go to the children of the testator, share and share alike, with the further provisions that "shall. any of my children die, then the children of such deceased child, should any children be surviving such deceased child, to take the share of the parent so deceased; and should any of my children die leaving no issue, then the share of such deceased child shall be divided equally among my surviving children." It was there held that the remainder was vested in the children of the testator and that the gifts over were clearly expressed in terms as conditions subsequent; that

the remainder to the children was subject to the shifting executory devises in the event that any of them die before the life tenant's death, either leaving children who would take or without children, when the share would go to the surviving children; that the gifts over if the children die, with or without children, were executory devises which were not destructible. That case is to be distinguished from the case at bar. There the children of the testator who were to take the remainder were all living at the time of the making of the will and at the time of the testator's death, and stood ready to take whenever and however the life estate terminated, and the condition of survival was a condition subsequent, while in the instant case neither Julia nor Sherman G. Cole has ever had children nor is there any certainty that they ever will have. Should the life estates, therefore, of Julia and Sherman be terminated there is no one in being to take the remainder over to the children. These remainders are therefore contingent. The will in this case created remainders in personal property as well as real estate. It has long been the rule in this State that a testator may create a life estate in personal property with the remainder over, which may be either vested or contingent. (*Boyd* v. *Strahan,* 36 Ill. 355; *Trogdon* v. *Murphy,* 85 id. 119; *Ward* v. *Caverly,* 276 id. 416.) The principles applicable to the vesting of remainders in real estate apply to gifts of personal property where the original gift is personalty and not merely a payment of income. *Carper* v. *Crowl,* 149 Ill. 465; *Hobbie* v. *Ogden,* 178 id. 357; *Green* v. *Old People's Home,* 269 id. 134; *Ingersol* v. *Ingersol,* 77 Conn. 408.

It will be seen, therefore, that all devises under the will are subject to the control of the parties entering into the contract in question. That being true, when the contract was entered into, the will was by it superseded and the property became intestate property. The contract, also, in addition to being one superseding the will, is a contract for

the partition of the property of the estate, and we come to the question whether its performance should be decreed by a court of equity. As we have seen, a contract of this character is such as courts of equity look upon with favor and will grant enforcement thereof unless there be some insuperable bar to prevent. *Hall* v. *Hall, supra.*

It is objected by appellees that Frederick G. Tate did not by the contract promise to convey, and without such conveyance on his part good title cannot be transferred, and that since Frederick is now deceased he cannot stand in the position of one who offers to convey. Frederick was one of the parties to the contract. By clause 7 of the contract he agreed that "the said parties to this agreement shall do and perform all things necessary to carry into effect this agreement and perfect the title in each other in and to the shares, respectively, so to be designated and allotted by said Swift and Hook." Frederick in his lifetime was a party seeking the enforcement of this contract and stood ready to make the necessary transfers. He by his contract agreed that such contract should supersede the will and that the property of the estate of Samuel D. Cole should be treated as intestate property. As consideration therefor he was to receive certain property rights from his mother. By his contract he gave up all interest under the will. This being true, he, and therefore his representatives, would be and are bound by his contract.

It is objected by appellees that Amelia Cole, wife of Albert H. Cole, refuses to sign the deeds contracted for here, and since she was not a party to the contract it is impossible to secure the good title contracted to be made. Is the signature of the wife of Albert H. Cole in this case necessary to the conveyance of good title? By the contract superseding the will the children of Samuel D. Cole become tenants in common in the estate left by him, and the question of the necessity for signature by the wife of Albert is to be governed by the rules governing the partition of

estates. Under the law of this State the wife has an inchoate right of dower in the real estate of which her husband is seized. Wives of tenants in common are not, however, necessary parties to suits for the partition of real estate. The right of dower in a wife subsists by virtue of the seizin of her husband, and this right is always subject to any incumbrance, infirmity or incident which the law attaches to that seizin, either at the time of the marriage or at the time the husband became seized. A liability to be divested by a sale in partition is an incident which the law affixes to the seizin of all joint estates, and the inchoate right of the wife is subject to that incident, so that when the husband is divested of his seizin and the realty is turned into personalty, or his co-tenancy into an estate in severalty in a part of such realty, the wife is by the law remitted to. her inchoate right in her husband's share of the personalty or of the realty which the husband takes in severalty by such partition. (*Davis* v. *Lang,* 153 Ill. 175; *Weaver* v. *Gregg,* 6 Ohio St. 547.) As was said by this court in *Casstevens* v. *Casstevens,* 227 Ill. 547: "When partition is made by mutual deeds between the co-tenants, the deeds should be read and construed in the light of the circumstances attending their execution in order to carry into effect the true intent of the parties, and it is competent to show that their only purpose was to accomplish the partition and that no other consideration passed between the parties. (21 Am. & Eng. Ency. of Law,—2d ed.— 1136.) When a voluntary partition takes place, each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his co-tenant by this transfer so that either can be said to hold under the other. (*Berry* v. *Seawell,* 65 Fed. Rep. 746.) It is well established as a general rule that co-tenants may partition the property among themselves by mutual agreement, (21 Am. & Eng.

Ency. of Law,—2d ed.—1131,) and that the agreement in writing for partition will have the same effect as an actual partition.—*Lavalle* v. *Strobel,* 89 Ill. 370."

The power of one co-tenant to enforce partition has always been recognized. There appears to be no good reason why the doing of an act by contract which may be compelled by law should not have the same effect as where it is so compelled. This matter appears not to have been, before this court, but in other States the rule has been adopted that where there is a voluntary partition of real estate, the wife of a co-tenant not being a necessary party to a bill for partition is not a necessary party to a deed for partition by agreement, for the reason that her inchoate right of dower being affected by the right of a co-tenant to compel partition by process of law, to which she need not be a party, her dower right is, in the absence of fraud, likewise affected in cases of voluntary partition.

In the case of *Potter* v. *Wheeler,* 13 Mass. 504, the widow of Potter claimed dower in an undivided one-half of property held by her husband, during his lifetime, in co-tenancy with his brother. A voluntary partition was made between the husband and his co-tenant, and deeds were made in pursuance thereof which were not signed by the claimant. In holding the wife's signature to the deed unnecessary the court said: "It is always in the power of one tenant in common to enforce a partition, and the husband would be bound by it. Fraud would avoid this as it would every act, however solemn. There seems to be no good reason why a voluntary performance of an act to which the party is compellable by law should not have the same effect as if produced by compulsion. It being an incident to an estate in common that either tenant may be compelled to make partition, the wife of one of them by her marriage gains an inchoate right to her dower subject to such a contingency, by which her interest may be increased or diminished."

In the case of *Napper* v. *Mutual Life Ins. Co.* 107 Ky. 134, the purchaser of certain real estate at an execution sale objected to proceeding with the purchase for the reason that the debtor, J. M. Harned, and his brother, having owned the land as joint tenants, made partition between themselves of the land and the deed made in pursuance of said partition was not signed by the wife of the brother of Harned. It was claimed she had not released her inchoate right of dower in the part assigned to the debtor and the debtor therefore took subject to such dower right. The court of appeals of Kentucky, in holding the title good, said: "The wife had an inchoate right of dower in the land held jointly by the brothers. J. M. Harned could have gone into court and asked and obtained a partition of the land without the consent of his brother's wife and without being required to make her a party to the proceedings, and the title to the land assigned to him in such a proceeding would not be clouded because she would take dower in a part which was assigned to her husband. If the land could be partitioned in the manner indicated, then the joint tenants could by agreement between themselves avoid the necessity of a suit and accomplish the same purpose. It is an incident to an estate in common that either tenant may be compelled to make partition. The wife of one of them by her marriage gains an inchoate right of dower subject to such contingency, by which her interest may be increased or diminished. This doctrine is supported by the opinions of many courts of the land.—*Potter* v. *Wheeler*, 13 Mass. 504; *Lloyd* v. *Conover*, 25 N. J. L. 51; *Wilkinson* v. *Parrish*, 3 Paige, (N. Y.) 655."

It has been held in this State that a decree or judgment in partition has no other effect than to sever the unity of possession and does not vest in either of the co-tenants any new or different title. After the partition each party has precisely the same title which he had before, but that which was before a joint possession is turned into a several one.

292—12

The same is true of a voluntary partition. Each party transfers·or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his co-tenant by such transfer so that either can be said to hold under the other. (*Cochran* v. *Cochran,* 277 Ill. 244; *Casstevens* v. *Casstevens, supra.*) This being true, the reasonable rule, as it appears to us, is that where co-tenants, without fraud and in good faith, by contract agree to a partition which could be compelled by law, the same may be had without the consent of the wife of a co-tenant or her joinder in a deed made in pursuance thereof. Nor does such a contract deprive the wife of a co-tenant of any right which is hers, for her inchoate right of dower in property held by·her husband in co-tenancy is burdened with the possibility of its being diminished by compulsory partition which any co-tenant may bring about, while her dower right in the property which he takes in severalty under partition is freed from such burden; and this is true as well in partition by agreement as by decree. Amelia Cole, therefore, is not a necessary party to a partition of the lands here, in the manner provided by the contract in question.

It is also contended by appellees that this contract was entered into through a mistake of fact and law, and that therefore a court of equity will not decree specific performance of it. It is argued by counsel for appellees that the misunderstanding of fact and law is in this: that the defendants thought they would by the conveyances and contract here secure a good title to the premises. From the views herein expressed it is evident that this was not a misapprehension of law and fact on their part. Nor is there any equity in such a claim. This contract, as the record shows, was prepared by the defendants after they had been informed of the possibility of the codicil to the will being set aside and the will being allowed to stand. It was made wholly at their instigation and entirely without conference

with or suggestion from the appellants herein. It is their contract, tendered by them as an ultimatum in the settlement of the controversy. It would be wholly inequitable for them to be now heard to say that they did not understand the contract or that they were in any way misled.

The entire equities in this case are with the appellants, and the chancellor erred in not decreeing specific performance of the contract. For this error the decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*