IDA MAE STEDMAN *et al.* Appellants, *vs.* LYDIA M. TATE *et al.* Appellees.

*Opinion filed June 22, 1927—Rehearing denied October 7, 1927.*

1. SPECIFIC PERFORMANCE—*equity will enforce contract as intended by parties.* While a court of equity will not make a new contract for parties, it is the duty of such court to place itself in the position of the parties whereby it may discover and give effect to their intention, so that the contract may be enforced as the parties must have understood and intended when they made it.

2. WILLS—*when heirs of devisee are entitled to performance of agreement by another devisee.* Where a devisee under a will has entered into an agreement with the testator's heirs and other devisees to divide the estate in accordance with the agreement so as to avoid litigation over the will, thereby giving up his rights under the will, and the property has been so divided, his heirs will be entitled to performance of a provision of the agreement by one of the other devisees to execute and deliver "such necessary written instrument or instruments as shall secure to him, at her decease, property equal in amount to that which is devised to him" by the will; and, if necessary, property in the estate conveyed to third parties will be subjected to said provision, as purchasers are charged with actual or constructive notice of the provisions of the will and the agreement in substitution thereof.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

R. A. GREEN, for appellants.

BOYS & OSBORN, and LEE O'NEILL BROWN, for appellee Lydia M. Tate; RECTOR C. HITT, T. E. WHITE, and WOODWARD, HIBBS & POOL, for other appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

In May, 1925, Bell Tate and Ida Mae Stedman, the widow and daughter, respectively, of Frederick Tate, who died intestate in 1918, filed their bill in the circuit court of LaSalle county against Lydia M. Tate, seeking to enforce the specific performance of an agreement executed during

January, 1916, by Lydia M. Tate, her sister, Julia Cole, her three brothers, Albert, Charles and Sherman Cole, and her son, Frederick Tate. All of the parties to the written agreement were the surviving children and only heirs-at-law of Samuel D. Cole, who died testate in October, 1913, except Frederick, who was his grandson and a devisee under Cole's will. The children of Cole became involved in litigation over his will and the division of his estate, and the contract entered into by his children and grandson, who were also all the devisees and legatees under the will, provided for the amicable settlement of the litigation, the setting aside of the will, the distribution and division of the entire estate, both real and personal, by Charles E. Hook and Edward C. Swift, who were named in the will as executors and in the agreement as administrators or commissioners, for the purpose of making an equal division of the estate. This same contract and all the parties thereto, except Frederick Tate, who died during that litigation, were before this court in the case of *Cole* v. *Cole, 292* Ill. 154. That case was a bill filed praying that specific performance of this agreement be enforced particularly against two of the children of Cole. We refer to that case for a more detailed statement of facts, provisions of the will and the agreement as set out. To the original bill filed in the case at bar Lydia M. Tate filed a general demurrer, and, upon motion and leave granted, an amended bill was filed making additional parties defendants. Thereafter an additional amendment was made to the amended bill. The amended bill set out some of the provisions of the will of Cole, referred to the litigation between the children arising out of the Cole will, and further set out the agreement entered into by Cole's five children and his grandson, Frederick Tate. Paragraph 10 of that agreement is set out in full in the bill and is as follows:

"Said Lydia M. Tate shall make, execute, acknowledge and deliver to said Frederick Tate, her son, such necessary

written instrument or instruments as shall secure to him, at her decease, property equal in amount to that which is devised to him in and by said will of said Samuel D. Cole, deceased."

The amended bill further sets out that the administrators or commissioners, Hook and Swift, made an appraisement of the estate, and under the provisions of the agreement allotted to Lydia M. Tate eighty acres of land in LaSalle county, valued at $22,000, and three lots in or near the city of Ottawa, Illinois, valued at $4900, and also delivered to her personal property or money in amount of $18,923.52; that after the decision of the Supreme Court in *Cole* v. *Cole, supra,* and the remandment of that case to the circuit court of LaSalle county, a decree was entered directing two of the children of Samuel D. Cole to execute and deliver deeds to the respective parties in accordance with the terms of the agreement; that in the suit just mentioned no issue of facts or law was made touching or concerning the construction to be placed upon paragraph 10 of the written agreement involved in the estate of Cole, and that no cross-bill was filed by either Bell Tate or Ida Mae Stedman asking that Lydia M. Tate be compelled to carry out the contract contained in paragraph 10. The decree, after remandment, however, did provide for the execution of certain deeds by Bell Tate and Ida Mae, the infant child of Frederick Tate, by her guardian *ad litem,* and that the same be delivered to Hook and Swift. The decree also provided for the payment of a fee of $200 for the guardian *ad litem* of Ida Mae. The amended bill further alleged that the property allotted and delivered to Lydia M. Tate by Hook and Swift was her full share of the estate under the terms and provisions of the agreement; that the necessary conveyances were made by the children of Cole, but that the provision in paragraph 10 of the agreement whereby Lydia M. Tate, the mother of Frederick, agreed to deliver instruments necessary to secure to Frederick, at her death,

property equal in amount to that which was devised to him by the will of Cole, had not been carried out; that complainants are the only heirs of Frederick; that all his debts had been paid and no administration had been had upon his estate, and that complainants, as his heirs, were entitled to all the rights which he had in his lifetime to enforce the contract against Lydia M. Tate, his mother. The amended bill further alleged that under the terms of the contract the daughter, Ida Mae, was in equity the owner of one-half of the estate allotted to Lydia M. Tate, subject to the latter's use of the same for her life, and that both complainants, the widow and daughter, were entitled to one-half of the money delivered to Lydia M. Tate as her share of the estate, subject to her life use of the same; that the consideration for the agreement by Lydia M. Tate in paragraph 10 of the contract to convey land and deliver money to Frederick was the relinquishment and giving up by him of the devise and bequest to him under the will of his grandfather, Samuel D. Cole; that her refusal to execute the instrument or instruments, and her denial of all rights of complainants in the property set off to her, and her conveyance of a portion of the real estate to certain parties, were a fraud upon complainants' rights, and that unless she be decreed to perform the contract, and unless she gives security for the payment of the money, the money will be lost to complainants, as her acts indicate she is willing to do anything to defeat complainants' rights and to put it out of their power to be secured. The bill further sets up the conveyance by Lydia M. Tate of the three lots to separate individuals, who are appellees in this suit. The prayer of the bill in substance is that Lydia M. Tate be decreed to convey to the daughter, Ida Mae, the undivided one-half of the eighty-acre tract of land remaining in the possession of Lydia, such conveyance to be subject to Lydia's use of the land for life; that complainants be decreed to be the owners of one-half of the sum of money received by Lydia as a further part

of her share of the estate of her father, subject to her use of the same for her lifetime, and that it be decreed that she give security to complainants for the payment thereof at her death; that each of the grantees or persons interested in the three lots to whom conveyances were made by Lydia be directed to re-convey a one-half interest therein to Ida Mae, but that such grantee have the use thereof during the lifetime of Lydia, and that the mortgagee's interest in one lot be decreed not to be a lien on the one-half interest therein of Ida Mae.

All the persons made defendants to the bill filed general demurrers and all defendants except Lydia M. Tate filed special demurrers, wherein it was alleged that it was not shown by the bill that it was necessary to resort to the respective lots conveyed to defendants to secure the performance of the contract set out in the bill, nor was it shown that the propery conveyed by Lydia was subject to any lien or claim of complainants, nor that defendants took title to the property with notice of any such lien. The demurrers to the bill were sustained, and, complainants abiding by their bill, a decree was entered dismissing the same for want of equity. From that decree Ida Mae Stedman and her mother, Bell Tate, have prosecuted an appeal to this court.

The question involved in this case is whether the provisions of the agreement executed by the children and grandson of Samuel D. Cole are sufficient in equity to warrant the enforcement thereof as between Lydia M. Tate, the mother of Frederick Tate, and the latter's daughter and widow. It is the contention of her counsel that the bill fails to show complainants' remedy at law is not adequate; that the contract is too indefinite and uncertain as to the amount of property for which security is to be given or as to the kind of and time when security is to be given to warrant specific performance.

It may be well to remark in passing, that Lydia M. Tate and her present counsel were interested in having this con-

tract specifically performed in the case of *Cole* v. *Cole,* *supra.* This court said in that case: "An examination of the contract will show that the purpose of it was, as we have said, to adjust family differences arising over the will of Samuel D. Cole. The contract itself states that it was entered into because of this fact and the fact that a bill had been filed to set aside the will and codicil of the deceased, and that it was the agreement of all the children of Samuel D. Cole, and of Frederick G. Tate, a grandson, that the estate of Samuel D. Cole should be divided equally among the children without delay and at as early a date as possible. This was the purpose of the contract, as we view it. The contract recognized the existence of the will and provided for the distribution of the property equally, notwithstanding the will. * * * It will be seen, therefore, that all devises under the will are subject to the control of the parties entering into the contract in question. That being true, when the contract was entered into, the will was by it superseded and the property became intestate property. The contract, also, in addition to being one superseding the will, is a contract for the partition of the property of the estate, and we come to the question whether its performance should be decreed by a court of equity. * * * A contract of this character is such as courts of equity look upon with favor and will grant enforcement thereof unless there be some insuperable bar to prevent. * * * Frederick [Tate] was one of the parties to the contract. By clause 7 of the contract he agreed that 'the said parties to this agreement shall do and perform all things necessary to carry into effect this agreement and perfect the title in each other in and to the shares, respectively, so to be designated and allotted by said Swift and Hook.' Frederick in his lifetime was a party seeking the enforcement of this contract and stood ready to make the necessary transfers. He by his contract agreed that such contract should supersede the will and that the property of the estate of Samuel D. Cole should be treated

as intestate property. As consideration therefor he was to receive certain property rights from his mother. By his contract he gave up all interest under the will. This being true, he, and therefore his representatives, would be and are bound by his contract."

The contract executed by the parties interested in the will provided for the same means to divide the estate of Samuel D. Cole into five equal parts in value as was contemplated under his will. Hook and Swift, as executors, were directed by the will to divide the estate, real and personal, into five equal parts, and if any child was given a less amount of land in value than the others, then such valuation should be equalized by adding personal property to such child's share in order to produce five shares of equal value. Hook and Swift, under the provisions of the contract, were authorized to use the same method in dividing the entire estate among the children of Samuel D. Cole. The only practical difference between the will and codicil thereto and the contract was, that by the will and codicil the shares or interests to be set off to three of the children were to be held by each of them for life and the respective shares of two of said children were in fee, while under the contract the share or interest to be allotted to each child was to belong to each of them in fee.

It was decided in *Cole* v. *Cole, supra,* that the agreement of the heirs of the testator was for the equal distribution of his property among his children notwithstanding the will, and that the effect of the contract was that the property be distributed among testator's children as intestate estate. The court held contracts of that character were looked upon with favor by courts of equity. Frederick Tate, the father of Ida Mae Stedman, signed the settlement agreement. He died before the decision in the *Cole case* was made, leaving Bell Tate his widow and Ida Mae his only child, and they succeeded to all his rights and interests under the settlement agreement. The will gave Frederick's

mother, Lydia M. Tate, a one-fifth part of the testator's estate for life, and at her decease one-half of the property was bequeathed to Frederick as his absolute property forever, and the other half was to be divided among the testator's other four children. The settlement agreement provided that Hook and Swift, who had been named in the will as executors, should, after the payment of costs and some other expenses, divide the property equally among the testator's five children, and said five children agreed to, and did, make quit-claim deeds to their brothers and sisters, respectively, after such allotment. But for the signature of Frederick Tate to the contract the settlement could not have been made. In consideration of his releasing all claims he might have under the will so that the children might each receive a one-fifth interest in the estate, by paragraph 10 of the agreement Lydia agreed to execute, acknowledge and deliver to Frederick "such necessary written instrument or instruments as shall secure to him, at her decease, property equal in amount to that which is devised to him in and by said will of Samuel D. Cole, deceased." Under the contract each of the children would receive his share in fee, whereas by the will some of them, and especially Lydia, were given only a life estate. She has received the benefit of her son's relinquishment of his rights and interests under the will. Her intention could not have been otherwise than as she agreed in and by paragraph 10 unless it was her fraudulent desire to obtain the property of her son with no purpose or intention to compensate him or to comply with her father's request. A court of equity cannot look with favor upon her contention that the agreement is too uncertain or indefinite to be enforced. It is true, courts will not make new contracts for parties, but it is the duty of a court of equity to place itself in the position of the parties whereby it may discover and give effect to their intention, so that the performance of the contract may be enforced as the parties must have understood and intended when they

made it. (*Field* v. *Leiter,* 118 Ill. 17; *Hayes* v. *O'Brien,* 149 id. 403.) We cannot assume Lydia intended to acquire from her son the benefits she received without intending to recompense him. Frederick has since died, and his mother now contends the contract is uncertain as to how she was to insure him to receive, at her decease, property equal in amount to that which was devised him by the will. In no uncertain terms she explicitly agreed to execute, acknowledge and deliver to her son the necessary instrument or instruments to secure him, at her decease, the property. There is no uncertainty or ambiguity that she agreed to do that, and she agreed to do it by the necessary written instrument or instruments to effectuate that agreement. She did not agree that the payment of the money to Frederick should be made a lien on her father's property which she received and did not specify exactly how the payment should be secured, but agreed to execute, acknowledge and deliver to Frederick the necessary written instrument or instruments to secure him. We are warranted in holding that she contemplated that the execution of more than one kind of instrument might be necessary, as she received both personal and real estate. She now contends, also, that the agreement is uncertain because it does not state when she should execute the necessary written instrument or instruments. It is obvious she could not execute the necessary instruments until she had received the property from Hook and Swift under the distribution of the Cole estate. This, it is admitted, has been done. The widow and infant child of Frederick, after the remandment to the circuit court in *Cole* v. *Cole, supra,* were directed to make and deliver deeds under the terms of the agreement. The death of Frederick was suggested in the litigation and a guardian *ad litem* appointed to represent his infant child and was paid a $200 fee for that service. When the contract had been fully performed and the mother of Frederick had received and gone into possession of her one-fifth share of her father's estate

the time for her to execute the necessary written instruments to secure her son had arrived. It would be, we think, unreasonable and unjust to say that no time for performing her agreement was contemplated or intended, but the reasonable construction to be given to the agreement is, that when she was placed in a position to do so she would execute the necessary instruments to secure her son. This she could do by the execution and delivery of a deed to one-half of the real estate, reserving to herself a life estate therein, and execute and deliver to appellants a contract, with security to be approved by appellants or the court, for the payment, at her decease, of the one-half of the amount of the personal estate which she received. It may be that as to the personal estate some other method would suggest itself which might be advisable. We only suggest that matter as to the personal estate because it is contended by her the contract is too uncertain to enforce its performance.

It is also suggested that the contract of Lydia M. Tate was to secure to her son, at her decease, property equal in amount to that devised him by the will of his grandfather, and the contract does use that language, but it is clear it refers only to the devise of a one-half interest in the life estate of Lydia. The will had been superseded and set aside, and the only devise made to Frederick was a one-half interest in his mother's share devised her by the will. If the will had been sustained and the distribution made under it, Frederick was entitled to a contingent interest in the shares of two other children of Samuel D. Cole in the event they died leaving no child or children. It is obvious, we think, that when the will was set aside and the distribution made to the Cole children in fee, it never was intended that Lydia should secure to Frederick anything but the devise to him, upon her death, of the undivided one-half of the property devised her. There is no denial that the agreement made by Frederick and the children of his grandfather was understandingly entered into, that it has been

approved by this court and has been fully performed, except Lydia has not done what she agreed to,—to insure her son, at her death, a one-half interest in the property she received. If she refuses or cannot be compelled to comply with her agreement, her grandchild cannot receive anything which her father intended to give and which she herself agreed to insure to her son, and he now being dead, his child has succeeded to his rights in the agreement. She has not executed the instruments she agreed to, and the fact that she has not done so and now contends she cannot be compelled to do so is equivalent to a repudiation of the contract. We are of opinion the contract is sufficiently definite and certain that a court of equity can and will compel her to do what she explicitly agreed to.

Some of the appellees are persons who have, by purchase or otherwise, obtained from Lydia M. Tate title to or an interest in three lots in or near Ottawa which under the contract were allotted to Lydia by Hook and Swift as part of her distributive share of her father's estate. Such appellees acquired their interests in the lots with actual or constructive notice of the rights of Frederick Tate and his heirs, and their interests are subject to the contract. *Forthman* v. *Deters,* 206 Ill. 159; *Cumberledge* v. *Brooks,* 235 id. 249; 2 Pomeroy's Eq. Jur. (3d ed.) sec. 597, p. 980; 1 Story's Eq. Jur. (12th ed.) sec. 789.

While the bill does not allege that it will be necessary to resort to the lots sold by Lydia M. Tate to secure the performance of the agreement, the lots of appellees who purchased from her are subject to the agreement. If Lydia can justly and equitably perform her contract without disturbance of the interests of purchasers from her we see no objection to her doing so. It may be equity would require her to do that if she is in a position to do it, but whether it would or not could not affect the right of appellants to subject the lots to the contract if that is necessary to secure its performance.

We are of opinion the demurrers should have been over-ruled, and the decree is reversed and the cause remanded to the circuit court for further proceedings in harmony with the views expressed in this opinion.

*Reversed and remanded.*