SELLAR BULLARD, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF CLARA R. SMITH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77764.   Promulgated April 3, 1936.

*Samuel S. Holmes, Esq., Lorentz B. Knouff, Esq.,* and *Harry Thom, Esq.,* for the petitioner.

*Hartford Allen, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine a deficiency in the estate tax of the estate of Clara R. Smith, deceased, in the sum of $17,271.46.

The petitioner alleges that the respondent erred in including in the gross estate of Clara R. Smith the corpus of a trust created on February 17, 1932, consisting of securities having an aggregate value of $112,148.75.

The decedent, Clara R. Smith, was born in 1856. She married Albert Paul Smith, who died in 1890. Four children were born to the decedent and her husband: Edward A., Lora, Bessie, and a child who died in infancy. Edward A. Smith married Virginia Winslow in 1912 and died on December 16, 1928, leaving his widow surviving him. No children were born to them.

Lora Smith married Kennett Cowan, was divorced from him about 1915, and has two children: Kennett Cowan, Jr., who was about 27 years of age in 1931, and Lora Louise, who was about 24½ years of age in that year and was married to Alfred Ruehrdantz, Jr. Kennett Cowan, Jr., married Elwyn Hewett. They have one minor son. Lora Ruehrdantz and her husband have no children.

Bessie Smith married Sellar Bullard. Three children were born to them: Caroline Marie, Barbara Sellar, and Clara Jean, now about 23, 22, and 17 years of age, respectively.

Clara R. Smith died testate on May 24, 1933, leaving a gross estate of over $650,000. Two of her sisters had been married to officials of the American Can Co. One sister gave to the decedent a large number of shares of the preferred stock of that company. Decedent thereafter (and prior to 1927) made direct gifts of approximately 1,000 shares of that stock to her three children.

On March 3, 1927, the decedent established a trust, irrevocable on its face. By it she transferred to her son, as trustee, with the Illinois Merchants Trust Co. as successor trustee, certain shares, common and preferred, in the American Can Co., the International Harvester Co., and five other well known corporations. The largest block was 1,824 shares of American Can Co. preferred stock. The trust agreement granted to the trustee broad powers of management and complete and exclusive authority and discretion to invest and reinvest the corpus of the estate.

The trust provided that the net income from the trust estate should be paid to the trustor during her lifetime and upon her death the trustee should set aside the sum of $300,000 in property or securities in three separate trusts of $100,000 each, the income from which should be paid to the trustor's three children during their lifetime. After the respective deaths of the two daughters the income from their trusts was to be paid to their respective children until the youngest living at the time the trust was established should attain the age of 26 years or, if deceased, then when such child, if living, would have arrived at that age, at which time the principal of each trust was to be divided equally among the children entitled thereto.

Upon the death of Edward A. Smith, decedent's son, the income from the corpus so set aside for him was to be paid to his widow during her lifetime unless a child or children survived him. In that event the income was to be paid to such child or children until the youngest became 20 years old, when the corpus was to be divided equally among such children. If any of Edward A. Smith's children should die before the distribution of the corpus then the income was to be paid to the heirs at law until the time set for final distribution. If Edward A. Smith died leaving no child surviving, the corpus was to be paid to the children of his sisters, subject to the intervening life estate of his widow, Virginia Smith.

The corpus remaining after establishing the three $100,000 trust funds was to be divided into three equal parts upon the death of the trustor and to be paid to her three children, if living, but if any be deceased, the share of such deceased child was to be added to the $100,000 trust fund created for that child.

The decedent's son Edward acted as her business manager and adviser. She relied on his judgment, suggestions, and advice. He died without issue on December 16, 1928. After his death Sellar Bullard, the decedent's son-in-law, acted in the same capacity as adviser. The decedent depended upon him and gave him her confidence. After Edward A. Smith's death the Illinois Merchants Trust Co. became the successor trustee and upon its merger with the Continental Illinois Bank & Trust Co. the latter became the successor trustee.

In August 1929 the decedent executed a will giving certain pecuniary bequests aggregating $63,000 to persons outside the immediate family and devised and bequeathed one-half of the remainder of her estate to Bessie Smith Bullard, absolutely, and the other half thereof to the Chicago Title & Trust Co. and Sellar Bullard, as trustees, with broad powers of management, to pay the net income therefrom to Lora Smith Cowan for her life and the remainder to her children when the youngest should become 25 years old.

In 1931 the decedent became dissatisfied with the trust created by her on March 3, 1927, because the trustee insisted that a part of the 1,824 shares of American Can preferred stock held in this trust be sold or exchanged for other securities in order to effect a greater diversification of investment. Due largely to her relationship to certain officers of the American Can Co., the decedent preferred to trust to the safety of the preferred stock of that corporation and to receive a higher income therefrom rather than to trust to the ability and judgment of the trustee to select the investments comprising the corpus of the trust. The daughters agreed with the decedent, and believed that if the trustee did not sell the stock before the decedent's death, it would do so thereafter.

At the time of the execution of the trust of March 3, 1927, the decedent's son told her that the trust was revocable and that she could do what she pleased with the trust funds and securities. However, some time after her son's death she was advised by her attorney and her son-in-law, Sellar Bullard, that the trust was irrevocable and that, if possible, it should be terminated and a new trust executed. Her attorney also advised her that a friendly dissolution of the old trust could be made if all adult parties in interest would join in the court action which would be necessary, due to the interests of minors as future beneficiaries of the trust. Various family conferences were held and the decedent decided that the proper procedure was to recall into her control the greater part of the preferred shares of the American Can Co. which had formed a part of the corpus of the old trust and thereafter make a new trust.

Virginia Smith, widow of the decedent's son, Edward A. Smith, refused to consent to the cancellation and termination of the old trust. Thereupon the decedent instructed her attorney to prepare a bill praying that the trust be declared void on the ground of misrepresentation and fraud on the part of her son. Such a bill was prepared and presented to the decedent and her two daughters for approval. The daughters became alarmed because Virginia Smith would oppose any such action and the family discord would become public. The bill was never filed. The decedent's attorney suggested that a decree declaring the trust void on the ground that certain of its provisions violated the rule against perpetuities, might be entered. Such a bill was filed, but Virginia Smith denied that the trust was invalid and refused to consent to the entry of any decree declaring it so. Later, however, she agreed to consent to the entering of such a decree on the sole condition that her rights and interests should be preserved exactly as they were set forth in the trust of March 3, 1927.

Thereupon, for the purpose of avoiding a family quarrel and preventing unpleasant litigation with its consequent undesirable notoriety, an oral family agreement was entered into. This agreement provided that upon the entering of the decree terminating the old trust a new trust would be created and become operative. The corpus of that trust would be the portion of the securities representing Virginia Smith's life estate created by the old trust. It was also agreed that the new trust would grant to her the identical interest which she possessed under the old one. The income was to be payable to decedent for life. The agreement further provided that the decedent would execute a new will bequeathing enlarged interests to the minor beneficiaries and making adequate provision for the adult beneficiaries. Virginia Smith further stipulated that the proposed new trust should be executed prior to the entry of the decree dissolving the old trust.

Pursuant to that agreement the new trust was executed on February 17, 1932. A new will was prepared eliminating $53,000 from gifts to persons other than the immediate family, bequeathing certain definite sums to the decedent's grandchildren, establishing two $100,000 trusts for the benefit of her daughters for life, with remainders to their respective children, and bequeathing the residue of her estate to her two daughters equally.

On February 17, 1932, the decedent sent the following letter to the Continental Illinois Bank & Trust Co., the trustee under both the old and the new trusts:

As you are aware, I have filed my bill in the Superior Court of Cook County to cancel a voluntary settlement in trust and for an accounting, in a certain cause entitled *Clara R. Smith, Complainant,* vs *Continental Illinois Bank and*

*Trust Company, as Successor Trustee, et al*, General No. 547563, the purpose of which is to cause to be declared void, inoperative and ineffective because in violation of the rule against perpetuities, a certain trust agreement executed by me on the 3rd day of March, 1927, under which agreement I conveyed to my son, Edward A. Smith, as Trustee, certain securities to be held thereunder, reserving to myself a life estate in the income of the said trust estate and making further provision for my two daughters and my son, or in the event of his death for his widow, containing other provisions as set forth in the said agreement which is set forth in full in my said bill of complaint. In that bill of complaint I further prayed for a decree by the court that by reason of the violation of the rule of perpetuities the whole of the trust arrangement so created should be destroyed and rendered void, that the trust by said agreement should be ended and terminated *in toto*, and that Continental Illinois Bank and Trust Company, Successor Trustee to my said son Edward A. Smith, now deceased, be ordered to account for and assign, transfer and set over to me all of the assets and property held by it in trust, and that I may thereupon hold and possess the same as my own absolute property free and clear of any trust declared in said trust agreement and free and clear of any right, claim or demand of any of the defendants in said suit, or of any person claiming by, through or under the provisions of said trust agreement.

One of the defendants in the said suit is Virginia Winslow Smith, who, as the widow of my said son Edward A. Smith, under the terms of the said trust agreement as it now stands would, after my death, be entitled to a life estate in the income from one-third (⅓rd) of the said trust property. In consideration of the said Virginia Winslow Smith consenting to a decree in accordance with the prayer of the bill in the said suit, I have agreed with her that upon such a decree being entered by the court, setting aside the said trust agreement and ordering Continental Illinois Bank and Trust Company to account for and to transfer all of the assets and property held by it as Successor Trustee under the terms of the said instrument to me, that I will forthwith set up and create for her benefit a new trust containing the provisions set forth in the draft of the trust agreement attached hereto, marked Exhibit "X" and now by reference made a part hereof as fully to all intents and purposes as though here set forth in full, and transferring to you, Continental Illinois Bank and Trust Company, as Trustee under the said instrument, the securities set forth in Schedule "A" attached to the said trust agreement, said securities being approximately one-third (⅓rd) of the securities now held by you as Successor Trustee under the trust agreement first aforesaid, after deducting, however, from such third a proportional part of such of the shares now held by you as Successor Trustee as shall be necessary to sell and dispose of in order to pay the expenses of the said proceeding, the shares so to be set over unto you as Trustee under the trust agreement, draft of which appears as Exhibit "X" attached hereto, being as follows:

[List of securities.]

Accordingly, upon the delivery to you of this instrument, which delivery is to take place simultaneously with the entry by the court of such consent decree in the above entitled matter, I hereby sell, assign, transfer, convey and deliver to you the securities and property above described, such delivery to you to be effective at once upon the entry of such decree by its terms ordering you to assign, transfer and set over unto me all of the assets held by you in the trust first above referred to, and I hereby instruct you to cause to be transferred into your name as Trustee under the said trust agree-

ment, draft of which is set forth in Exhibit "X" attached hereto, without first causing the same to be transferred into my name, the securities and property above listed, being the same as the securities and property referred to in Schedule "A" attached to the said trust agreement which is attached hereto as Exhibit "X", the cost of which transfer, if any, to be paid by me; and I further direct you to hold said securities under the terms of the said trust agreement, draft of which is attached hereto as Exhibit "X", the original of which trust agreement I am delivering to you simultaneously with the delivery of this instrument, the same to be held by you and administered under the terms thereof, and I further direct that you cause to be transferred into my name all other securities and property, except that above listed, the cost of which transfer shall be paid by me, and deliver the same to me.

It is my intention herein that without the lapse of any period of time between the entry of such decree setting aside the trust agreement first above referred to, and the creation of the new trust, copy of the instrument creating which is attached hereto, marked Exhibit "X", the said new trust shall be immediately set up upon the dissolution of the old one so that the rights possessed by me to receive the income therefrom during my life and the right possessed by said Virginia Smith after my death to receive the income therefrom during her life, shall arise immediately upon the extinguishment of the similar rights, respectively, which I and the said Virginia Winslow Smith possess under the former trust agreement first above referred to.

The instrument was duly signed and acknowledged by the decedent.

The court decree was entered on February 27, 1932. By that decree the court found the following facts material to the issue:

That said trust agreement, by reason of said violation of said rule against perpetuities, was and is wholly inoperative and ineffective as to one-third of said trust fund; that said complainant intended and conceived the disposition of the whole of said trust fund as one single and connected distributive scheme and would not have created said trust and provided for the payment of either income or principal of any part of said fund to said Edward A. Smith or to any other beneficiary named in said instrument if she had known or had been advised that the provisions therein for distribution to the children of her son Edward surviving him were void, or that the further provisions for the distribution of shares designed for such children effective in the event he should leave no child surviving him were void, and that by reason of the ineffectiveness of said provisions disposing of the corpus of said share so set aside for said Edward A. Smith the whole of said scheme and trust arrangement is destroyed and rendered void:

That all assets and property held by the said Continental Illinois Bank and Trust Company as such successor trustee in said trust are the complainant's own absolute property free and clear from any trust declared in said trust agreement and free and clear of any right, claim or demand of the defendants herein or any of them, or any persons represented in this suit by said defendants or any of them, or any persons claiming by, through, or under the provisions of said trust agreement; * * *

The court decreed as follows:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the said trust agreement entered into on March 3, 1927 by and between the complainant, Clara R. Smith, as depositor, and her son, Edward A. Smith, as Trustee, and the trusts

thereby declared, are wholly inoperative, void, and of no effect, for the reasons hereinbefore stated and the said trust agreement and the trusts thereby attempted to be created, and each and every of the same, are hereby declared to be wholly inoperative, void, and of no effect.

It Is Further Ordered, Adjudged, and Decreed that all the assets and property held by said Continental Illinois Bank and Trust Company as such successor trustee in said trust are the complainant's own absolute property, free and clear from any trust declared in said trust agreement, and free and clear of any right, claim, or demand of the defendants herein or any of them, or any persons represented in this suit by said defendants or any of them, or any person claiming by, through, or under the provisions of said trust agreement.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

It Is Further Ordered, Adjudged, and Decreed that said Continental Illinois Bank and Trust Company, as such successor in trust, forthwith assign, transfer, and set over to the complainant, Clara R. Smith, all the assets and properties hereinbefore found to be held by it now as such successor trustee.

The new will contemplated by the family agreement was executed on March 8, 1932, in California and an identical will was executed in Illinois on September 10, 1932, the will of March 8, 1932, being destroyed. The Illinois will was made to facilitate probate. The decedent released her interest in the corpus of the March 3, 1927, trust, the benefits from which accrued to Virginia Smith during her lifetime with the remainder to the decedent's two daughters, but retained the net income therefrom for her own life by executing the trust of February 17, 1932. The decedent made immediate gifts of $10,000 to each of two grandchildren as advances on her bequests to them.

The material provisions of the trust of February 17, 1932, are as follows:

&ast; &ast; &ast; the Trustor &ast; &ast; &ast; has sold, assigned, transferred, conveyed and delivered and by these presents does sell, assign the securities and property described in Schedule A hereto attached &ast; &ast; &ast;.

First: (a) During the lifetime of the Trustor, but only after the death of Virginia Winslow Smith, the Trustor may, at any time and from time to time by a further or supplemental instrument by her signed and acknowledged and delivered to the Trustee, (1) alter, change, or amend this agreement and the terms of the trust hereby created; (2) change the beneficiaries under this trust; (3) withdraw and receive all or any portion of the corpus of the trust estate; (4) wholly or partially revoke and annul the provisions hereof, Provided that the duties and responsibilities or the compensation of the Trustee shall not be changed or fixed without the consent of the Trustee; and (5) remove the Trustee and appoint a successor.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Sixth: The income from the trust estate and the principal thereof shall be distributed as provided in Schedule B hereto attached, signed for further identification by the Trustor and by an officer of the Trustee, and made a part hereof as though at length fully set forth herein.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

SCHEDULE A

[A list of securities deposited.]

SCHEDULE B

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Providing for the Distribution of Principal and Income of the Trust Estate.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　.　\*

The said Trustee shall pay all the net income arising from said trust estate to the Trustor, CLARA R. SMITH, for and during her natural life. Upon the death of said Trustor, CLARA R. SMITH, said Trustee shall pay the entire net income thereafter arising from said trust estate to VIRGINIA WINSLOW SMITH (daughter-in-law of said Trustor) for and during her natural life. Upon the death of both said Clara R. Smith and Virginia Winslow Smith said Trustee shall pay over and distribute all the principal of said trust estate, together with any accumulated and undistributed income thereon, to LORA SMITH COWAN and BESSIE SMITH BULLARD, (daughters of said Trustor) in equal parts, share and share alike. The income provided hereunder to be paid to the above named beneficiaries shall be paid in monthly installments.

During her lifetime the decedent received the income according to the provisions of schedule B. On February 17, 1932, the property described in schedule A was the same property and approximately one-third of all the property constituting the corpus of the trust of March 3, 1927. Pursuant to the direction contained in decedent's letter of February 17, 1932, to the trustee, the securities transferred by the trustee of the trust of March 3, 1927, were transferred directly to the trustee of the trust of February 17, 1932, without being transferred to the decedent or passing into her possession.

All the property comprising the second trust came out of the property comprising the first trust. The securities held under the first trust which were not transferred and delivered by the trustee into the second trust or transferred and delivered to the decedent's grandchildren were transferred to the name of the decedent.

The trust under which the property in controversy was held at the date of the decedent's death (May 21, 1933) was executed on February 27, 1932. At that time the joint resolution [1] amending section

[1] PUBLIC RESOLUTION—NO. 131—71ST CONGRESS (H. J. Res. 529)

Joint Resolution to amend Sect. 302 of the Rev. Act of 1926.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the first sentence of subdivision (c) of sect. 302 of the Revenue Act of 1926 is amended to read as follows :

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

Approved March 3, 1931.

302 of the Revenue Act of 1926 [2] was in effect. This provision was further amended by section 803 of the Revenue Act of 1932,[3] passed before the decedent's death.

The petitioner contends that even though the cited statute does apply to the situation before us, the facts bring it within the exception. He asserts that the consideration for which the trust was established was the execution of the family agreement and that the transfer "amounted to a *bona fide* sale for an adequate and full consideration in money or money's worth."

It is a well established principle, particularly in Illinois, that a family settlement agreement constitutes a valid consideration for the conveyance of property. *Hall* v. *Hall*, 125 Ill. 95; 16 N. E. 896; *Cole* v. *Cole*, 292 Ill. 154; 126 N. E. 752; *Hagen* v. *Anderson*, 317 Ill. 173; 147 N. E. 791; *Stedman* v. *Tate*, 326 Ill. 442; 158 N. E. 97. But a valid consideration is not necessarily "an adequate and full consideration in money or money's worth" as specifically required in the statutory exception. We have so held in cases involving similar consideration. *Lillian T. Latty, Executrix*, 23 B. T. A. 1250; affd., 62 Fed. (2d) 952; *Central Union Trust Co. of New York et al., Executors*, 24 B. T. A. 296. See *Prewit* v. *Wilson*, 103 U. S. 22.

The facts in the case at bar bring it precisely within the purview of the statute. By the trust of February 27, 1932, the decedent transferred certain stock, the right to the net income from which she retained during her natural life. The petitioner seeks to avoid the application of the statute on the theory that it was impossible for Clara R. Smith to transfer the corpus of the trust because she had parted with the ownership of it under the old trust and had never regained it; furthermore, that she had executed the new trust by virtue of the family agreement under which the rights of herself

---

[2] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

[3] SEC. 803. FUTURE INTERESTS.

(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

and Virginia Smith were preserved exactly as they had existed under the old trust.

Even if we give full faith and credence to the family agreement, as we construe that arrangement we can not agree with the petitioner's argument. The execution and performance of the terms of that agreement created a valid consideration for all the transactions and acts done pursuant to it, but the several portions of the agreement must be examined to determine exactly what the various parties were to do. Moreover, we must consider what was actually done.

The old trust was being subjected to attack and litigation was threatened. In order to prevent such an undesirable procedure, the adult members of the family agreed to extinguish the old trust by means of a friendly court action and to create a new trust which would grant Virginia Smith rights identical with those she had enjoyed under the old trust. Her old rights were extinguished with the death of the old trust and a similar new interest rendering her position equivalent to that which she had previously enjoyed was created. The rights of others were substantially altered. In order to accomplish this result the parties to the contract agreed to procure the cancellation of the old trust on the ground that it violated the rule against perpetuities.

The notice given by the decedent on February 17, 1932, to the trustee contains a comprehensive and exact picture of the status of the old trust as seen by the decedent, Virginia Smith, and the other members of the family. The letter states that it is the decedent's intent that the right of herself and Virginia Smith to receive the income from the corpus during their respective lives shall *arise* under the new trust immediately upon the extinguishment of *similar* rights under the old trust. The decree of the court declared the old trust void and ordered the property transferred to decedent, its absolute owner.

Thus, in contemplation of the parties at the time the new trust was executed and by the very terms of the decree of the court, the complete and exclusive ownership and control of the stock which the respondent proposes to tax as a part of the decedent's estate was restored to her. Indeed, it was a recognized and essential part of the agreement that she should acquire full possession of, title to, and power of disposition over the property in order that she might reconvey a portion of the same property in trust for the benefit of Virginia Smith and others.

The decedent then proceeded to carry out her part of the family agreement by creating the new trust, retaining the income to herself, making immediate gifts, altering bequests, and executing a new will. The intervention of the quoted statute rendered such property subject to tax at her death.

The petitioner stresses the fact that the trust corpus passed directly from the trustee of the old trust to the trustee of the new trust. He overlooks, however, the further fact that this procedure was adopted, obviously as a convenience, by the express authority and direction of Clara R. Smith contained in her letter of February 17, 1932, to the trustee. She received the title to and, constructively, the possession of the property in accordance with the terms and purposes of the family agreement.

We can see no inharmony in holding that the trust of February 17, 1932, is entirely separate and distinct from the trust of March 3, 1927. On the contrary, the establishment of the later trust was the outcome of and consonant with the family agreement. It became an independent instrument and the parties thereto so intended. All adult members of the family joined in the rearrangement of the decedent's estate. The interests of the infant members were protected by the customary legal safeguards. The decree of the court declared in plain and emphatic language that the decedent was the absolute owner of the property and ordered it transferred to her. The adult parties consented to the entry of that decree. Therefore, they can not now be heard to deny its plain and unequivocal effect.

The parties stipulated that on the presentation of proper proof of payment the petitioner should receive credit in the computation under Rule 50 for inheritance taxes paid to the State of Illinois.

Reviewed by the Board.

*Decision will be entered under Rule 50.*